<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PROFESSIONAL BUYER'S GUILD, LLC, : | : | |
| Plaintiff, | : | Civ. No. 06-2127 (GEB) |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| ACE FIRE UNDERWRITERS | : | |
| INSURANCE COMPANY, d/b/a ACE | : | |
| USA INSURANCE COMPANY, and | : | |
| JOHN AND JANE DOES 1-5, (Said Names | : | |
| Representing Fictitious Individuals, True | : | |
| Names Unknown at this Time), | : | |
| Defendants. | : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the court upon defendant ACE Fire Underwriters Insurance Company's ("ACE Fire") motion for summary judgment. Also before the Court is plaintiff Professional Buyer's Guild, LLC's ("PBGLLC") motion for partial summary judgment seeking to strike three of ACE Fire's affirmative defenses. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78. For the reasons set forth below, this Court will grant in part and deny in part ACE Fire's motion for summary judgment, and grant in part and deny in part PBGLLC's motion for partial summary judgment.

**I.    BACKGROUND**

This dispute arises over the rights to certain profit sharing payments associated with a May 16, 1991 agency agreement (the "Agency Agreement") between CIGNA Fire Underwriters

Insurance Company ("CIGNA Fire") and Professional Buyer's Guild, Inc. ("PBGI").  The Agency Agreement required PBGI to serve as CIGNA Fire's agent for the management and placement of insurance in a program of "Nurses Liability Insurance." Certification of Steven D. Johnson, Ex. 3.  In return for these services, PBGI would be compensated in four ways.  PBGI was to receive a commission of fifteen percent on earned premium, and administration fee of twelve and a half percent, a marketing expense of one half of one percent and certain payments made pursuant to a Profit Sharing Agreement (the "PSA").  Id. The PSA, incorporated into the Agency Agreement as Addendum C, entitles PBGI to fifty percent of any Program-related profit in excess of an amount that afforded CIGNA Fire with a fifteen percent return on equity, as determined by an agreed-upon formula.  Id.  Profit sharing payments associated with premiums written in a particular year were to be paid in part after each successive year and in full by the end of the sixth year.  Id.  Each year, the amount of profit sharing monies to be paid, is to be calculated according to the terms of the PSA.  Id.  The six year formula was developed to coincide with the statute of limitations for Nursing negligence claims that could result in losses.

      In 1999 CIGNA Fire was acquired by ACE LTD and was renamed as ACE Fire.  On December 5, 2001, PBGI sold many of its assets to Affinity Insurance Services, Inc. ("Affinity") pursuant to an Asset Purchase Agreement (the "APA").  Also on December 5, 2001, PBGI signed an Agreement and Plan of Merger (the "Merger Agreement"), which provided the terms of a merger of PBGI and PBGLLC.  On December 31, 2001, the merger was consummated, with PBGLLC emerging as the surviving entity.

      ACE Fire moves for summary judgment, arguing that the PBGLLC's complaint must be dismissed because PBGLLC does not have standing to sue.  Professional Buyer's moves for

summary judgment "striking with prejudice" ACE Fire's fourteenth, fifteenth and sixteenth affirmative defenses.[1]  ACE Fire's fourteenth affirmative defense is: "PBGLLC has no standing to enforce the Agency Agreement."  ACE Fire's fifteenth affirmative defense is: "The purported merger agreement between PBGI and PBGLLC of December 31, 2001 pursuant to which PBGLLC claims to have acceded to the rights of PBGI under the Agency Agreement is an assignment/transfer of the Agency Agreement to which ACE Fire did not consent and is thus void. (Agency Agreement, Section 14)."  ACE Fire's sixteenth affirmative defense is: "PBGI terminated the Agency Agreement by virtue of the sale of its assets to Affinity Insurance Services on or about December 5, 2001, as alleged in the Amended Complaint at Paragraph 15."

## II.     DISCUSSION

### A.     Standard of Review for Motions for Summary Judgment

In deciding a motion for summary judgment, a court should grant the motion if "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v.

---

[1] Courts differ as to whether a motion for summary judgment is the appropriate procedure by which to challenge an affirmative defense. See U.S. v. Manzo, 182 F. Supp. 2d 385, 395 (D.N.J. 2000) (considering the sufficiency of a defense under a partial summary judgment framework); Krauss v. Keibler-Thompson Corp., 72 F.R.D. 615, 616 (D. Del. 1976) ("The weight of authority and a close textual examination of the Rules convinces this Court that a motion to strike an affirmative defense can be considered only as a Rule 12(f) motion and is not a proper motion under Rule 56(d)").  Because both parties have briefed PBGLLC's motion as one for summary judgment and have offered facts outside the pleadings, the Court will treat PBGLLC's motion as one for partial summary judgment.

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).  In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

      **B.**    **Whether The Merger Violated The Agency Agreement: ACE Fire's Fifteenth Affirmative Defense**
            **1.**    **The Parties' Arguments**

ACE Fire, both in its Fifteenth Affirmative Defense and its briefs on the present motions, argues that PBGLLC's merger with PBGI was an "assignment, transfer, encumbrance or other disposition" without ACE Fire's consent and is therefore void.  As support, ACE Fire relies on Section 14 of the Agency Agreement, which is entitled "Assignment" and provides that PBGI "shall not assign, delegate, transfer, encumber or otherwise dispose of this Agreement, any interest herein, or any rights or obligations hereunder without the prior written consent of [ACE Fire] and any purported assignment, transfer, encumbrance or other disposition without such consent shall be void."

PBGLLC argues that under New Jersey law, a merger passes rights by operation of law and does not violate so-called "no assignment" provisions, such as the one contained in the Agency Agreement.  Therefore, PBGLLC contends that ACE Fire's Fifteenth Affirmative Defense should be struck.

ACE Fire counters that the merger cases cited by PBGLLC are distinguishable and that the Agency Agreement "was, in essence, a personal services contract and therefore not assignable

under New Jersey law." ACE Fire also argues that the equities of the case require the Court to rule against PBGLLC.

### 2.     Applicable Law

The parties agree that New Jersey law controls whether the merger of PBGI into PBGLLC effected an "assignment, transfer, encumbrance or other disposition" in violation of the Agency Agreement. Def. Br. at 4; Pl. Br. at 7. New Jersey Law provides that the surviving corporation in a merger succeeds to the rights and privileges of both corporations and that "[a]ll real property and personal property, tangible and intangible, of every kind and description, belonging to each of the corporations . . . shall be vested in the surviving or new corporation without further act or deed." N.J.S.A. 14A:10-6.[2]

Although the New Jersey Supreme Court has not addressed whether the vesting of contract rights by way of a merger violates "no assignment" clauses, the Appellate Division of New Jersey has addressed the issue in Segal v. Greater Valley Terminal Corp., 199 A.2d 48 (1964). The Segal court held that a merger does not effect an "assignment or similar transfer" of a real estate lease. Segal, 199 A.2d at 50. Acknowledging deep-rooted policies against restraints on the alienation of real property interest, the Segal court subjected the "no assignment"

---

[2]The New Jersey merger statute, N.J.S.A. 14A:10-6, provides, in relevant part:
(c) Such surviving or new corporation shall, to the extent consistent with its certificate of incorporation as amended or established by the merger or consolidation, possess all the rights, privileges, powers, immunities, purposes and franchises, both public and private, of each of the merging or consolidating corporations.
(d) All real property and personal property, tangible and intangible, of every kind and description, belonging to each of the corporations so merged or consolidated shall be vested in the surviving or new corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation.

provision "to the doctrine of strict construction which tends to limit its operation." Id. at 50. The Segal court read the New Jersey merger statute literally, holding that the passage of rights via merger "whether labeled an assignment, sublease, or transfer is by operation of law, and it will not operate as a breach of a covenant barring assignment." Id.

Similarly, the court in Federal Insurance Co. v. Purex Indus., Inc., 972 F. Supp. 872, 889 (D.N.J. 1997), rejected an argument that a merger violated a "no assignment" clause in an insurance coverage contract. The Federal Insurance court noted that several courts have supported the proposition that a "no assignment" clause does not apply to a transfer of insurance coverage effected through a merger. Id. The court stated that the rationale for this rule is that "such transfers do not entail any increase in risk or hazard assumed by the insurer." Id. (citing Brunswick Corp. V. St. Paul Fire & Marine Ins. Co., 509 F. Supp. 750, 752-53 (E.D. Pa. 1981)). The court concluded that "as a matter of law . . . the insurance policy . . . would have transferred to [the surviving corporation] along with the other assets involved in the transaction, absent a specific provision in the policy to the contrary." Id. at 890.

### 3. Under New Jersey Law, the Merger Did Not Breach the Agency Agreement's Prohibition Against Assignment.

The Court concludes that PBGLLC has established that, under New Jersey law, the merger of PBGI into PBGLLC did not breach Section 14 of the Agency Agreement. ACE Fire has not raised a genuine issue of material fact that would preclude partial summary judgment on this issue.

The Court is persuaded that the reasoning of the Segal and Federal Insurance decisions should be applied in this case. ACE Fire argues that Segal should not be followed for five

6

reasons. First, ACE Fire mistakenly asserts that Segal applied New York law rather than New Jersey law. Def. Opp. Br. at 4; see Id. at 124 (applying New Jersey law because the issue involved the title, transfer and disposition of lands in New Jersey); Kelly v. Alstores Realty Corp., 593 A.2d 347, 350 (N.J. Super. App. Div. 1991) (citing Segal with approval and noting that it applied New Jersey law), aff'd 613 A.2d 1163 (N.J. 1992); see also Federal Ins. Co., 972 F. Supp. at 890 (applying New Jersey law). Second, ACE Fire attempts to distinguish Segal by stating that the case involved an *in rem* entitlement. Def. Opp. Br. at 4. Although the assignment provision was strictly constructed in Segal because it dealt with restraints on the alienation of real estate, the Court is persuaded by the reasoning in Segal and Federal Insurance to the extent that these courts relied on the text of the New Jersey merger statute to hold that a merger acts by operation of law. Further, Federal Insurance applied the same rule outside of an *in rem* context.

      Third, ACE Fire argues that, unlike the defendant in Segal, it could not have foreseen that any party other than PBGI would have claimed profit sharing because it did not involve a 99 year agreement. Def. Opp. Br. at 4. The Court disagrees because the Agency Agreement does not specify that it would only apply for a limited time period. Therefore a merger here is not clearly less foreseeable than in Segal. Fourth, ACE Fire claims that the scope of the prohibition here is broader than the prohibition at issue in Segal. Def. Opp. Br. at 5. The Court is not persuaded. In related situations, New Jersey has narrowly construed "no assignment" clauses, giving them effect only where their language specifically addresses the issue at hand. See Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 442 (3d 1999) ("New Jersey joins numerous other jurisdictions that follow the general rule that contractual provisions limiting or prohibiting

assignments operate only to limit a parties' right to assign the contract, but not their power to do so, unless the parties' manifest an intent to the contrary with specificity"). The prohibition in Segal prohibited the "assignment or other transfer," while the prohibition at issue in this case prohibits "assignment, transfer, encumbrance or other disposition." Although the "no assignment" provision here is arguably broader, the Court construes the prohibition narrowly and concludes that the prohibition does not prohibit rights passing via merger. Fifth, ACE Fire argues that unlike the Plaintiff in Segal, ACE Fire was injured by the merger. Def. Opp. Br. at 5. But this Court understands any injury to ACE Fire to be a result of the prior termination of the Agency Agreement, not the merger. See, e.g., Def. Opp. Br. at 8 (claiming that sale of assets to Affinity was to ACE Fire's detriment).

The Court does not find the additional arguments made by ACE Fire persuasive. ACE Fire argues in its reply brief, that the Agency Agreement "was, in essence, a personal services contract and therefore not assignable under New Jersey law." Def. Reply B. at 2. ACE Fire contends that "this rule is applied even when a principal of a corporation assigns his rights to that corporation." Def. Reply Br. at 3. ACE Fire summarizes that "[i]n other words, PBGI's duties under the Agency Agreement were non-delegable." Id. at 4. The Court is unpersuaded by this argument for three reasons. First, ACE Fire's reference to corporate principals is misplaced. The Agency Agreement was between PBGI and CIGNA, not between a principal of PBGI and CIGNA. Similarly, no principal of PBGI "assign[ed] his rights" to PBGLLC; PBGI merged into PBGLLC. Second, the present case does not involve an issue of whether PBGLLC's duties are delegable, but whether accrued rights may pass to PBGLLC. Third, this argument does not address the fact, discussed above, that under New Jersey law, a merger does not act as an

assignment.

Finally, the Court is not persuaded that the equities of the situation require it to hold for ACE Fire. The rights to accrued profit sharing passed by operation of law and did not violate the assignment provision of the Agency Agreement. This result is not inequitable.

For the above reasons, PBGLLC's partial summary judgment motion seeking to strike the Fifteenth Affirmative Defense is granted.

### C. Whether PBGLLC Has Standing: ACE Fire's Fourteenth Affirmative Defense
#### 1. The Parties' Arguments

ACE Fire contends that PBGLLC has no standing because they were not originally a party to the Agency Agreement. ACE Fire claims that the December 31, 2001 Merger could not have conveyed, transferred or assigned any profit sharing rights because those rights were extinguished by PBGI's sale of the Program to Affinity, nearly three weeks before the merger. Def. Opp. Br. At 10.

PBGLLC counters that PBGI accrued the rights to be paid for profit sharing monies accrued prior to the termination of the Agency Agreement. For this reason, PBGLLC seeks to strike ACE Fire's Fourteenth and Sixteenth affirmative defenses.

#### 2. Applicable Law

The doctrine of standing involves both constitutional and prudential considerations. Township of Piscataway v. Duke Energy, 488 F.3d 203 (3d Cir. 2007). The constitutional requirements "ensure that plaintiffs have a personal stake or interest in the outcome of the proceedings" sufficient to justify federal court intervention. Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 175 (3d Cir. 2001) (internal quotation marks omitted). The prudential

requirements dictate that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975).

In order to consider the parties arguments, the Court must first consider whether PBGI's right to profit sharing monies survived the termination of the Agency Agreement

### 3. Whether The Termination of the Agency Agreement Deprived PBGI of the Right to Receive Profit Sharing Monies.

#### a. The Parties' Arguments

PBGLLC contends that the Termination of the Agency Agreement did not cause PBGI to lose the right to receive profit sharing monies associated with services rendered prior to the termination of the Agency Agreement, because those monies were intended as remuneration for the services rendered.

ACE Fire argues that profit sharing was not paid for services rendered, but "was merely a reward generously offered by ACE Fire as an incentive to PBGI to continue to bring in policies." Def. Br. at 25. ACE Fire also argues that the profit sharing monies were not accrued because the exact amount of the profit sharing monies to be paid could not be determined at the time the Agency Agreement was terminated. ACE Fire also argues that because Section 7(c) of the Agency Agreement is silent regarding continuing duties of ACE Fire in the event of termination, ACE owes no duties or payments after termination.

#### b. Applicable Law

Under New Jersey law, an employer must pay the contracted compensation related to services rendered prior to the termination of an agency employment contract. See, e.g., Leadership Real Estate, Inc. v. Harper, 638 A.2d 173, 183 (N.J. Super. Law Div. 1993) (holding

that a real estate broker is entitled to a commission on a sale occurring after the termination of the listing agreement where the broker is the "efficient producing cause" of the sale); see also RESTATEMENT (SECOND) OF AGENCY § 456 (1958) ("[i]f a principal properly discharges an agent for breach of contract, or the agent wrongfully renounces the employment, the principal is subject to liability to pay to the agent . . . the agreed compensation for services properly rendered for which the compensation is apportioned in the contract, whether or not the agent's breach is wilful and deliberate").

        **c.**      **The Termination of the Agency Agreement Did Not Deprive PBGI of the Right To Receive Profit Sharing Monies For Services Rendered.**

The Court concludes that PBGI retained the right to receive profit sharing monies after the termination of the Agency Agreement. A jury could only find that the profit sharing monies were intended to serve as compensation for services rendered. Section 5 of the Agency Agreement, entitled "Compensation to the Agent" specifically states that PBGI's "remuneration for the faithful performance of its duties hereunder shall be a commission and an administrative fee as set forth in Addendum B and a profit sharing payment as set forth in Addendum C." Certification of Steven D. Johnson, Ex. 3. This language makes clear that the profit sharing payments compensation for the performance of duties by PBGI. Moreover, the language of the PSA does not indicate that the obligation to pay profit sharing is contingent upon the continued employment of PBGI. Indeed, the PSA merely states that the payments "shall be calculated" each year and "shall be payable." Id.

The Court disagrees with ACE Fire's characterization of the profit sharing payments as "merely a reward generously offered by ACE Fire as an incentive to PBGI to continue to bring in

policies." Nowhere in the PSA or in the Agency Agreement is such a purpose described. The PSA must be considered as inside the four corners of the Agency Agreement. As discussed above, the plain language of the Agency Agreement indicates that the profit sharing payments was meant to be compensation to PBGI for services rendered. To the extent that profit sharing payments acted as an incentive to PBGI to continue to render services, it makes no difference because the same could be said of the other payments in the Agency Agreement.

Likewise, the Court is not persuaded by the fact that the exact amount of the profit sharing monies to be paid was not known at the time the Agency Agreement was terminated. The Court has not been presented with and has not found authority to support such a distinction.

The Court also disagrees with ACE Fire's interpretation of Section 7(c) of the Agency Agreement. ACE Fire's obligation to pay PBGI for services rendered is an obligation accrued when PBGI rendered the services. To find otherwise, would permit ACE Fire to escape their obligation to pay for services rendered simply by terminating the contract.

Therefore, the Court concludes that after the termination of the Agency Agreement, PBGI retained the right to any earned profit sharing monies.

### 4. PBGLLC Has Standing

The Court concludes that PBGLLC has standing, because: (1) PBGI's right to any profit sharing monies associated with services rendered survives the termination of the Agency Agreement; and (2) PBGI successfully passed its rights by way of the merger. Therefore, the Court denies Defendant's motion for summary judgment and grants PBGLLC's motion for

partial summary judgment as to ACE Fire's Fourteenth Affirmative Defense.[3]

### D. Genuine Issues of Material Fact Preclude Summary Judgment on ACE Fire's Sixteenth Affirmative Defense

Neither party has presented to the Court any evidence indicating whether, under the formula described in the PSA, any profit-sharing payments would, in fact, be due. ACE Fire's Sixteenth Affirmative defense is: "PBGI terminated the Agency Agreement by virtue of the sale of its assets to Affinity Insurance Services on or about December 5, 2001, as alleged in the Amended Complaint at Paragraph 15." To the extent this affirmative defense goes to a standing argument, it must be struck for the reasons discussed above. To the extent this defense impacts the issue of whether and to what extent profit sharing monies have accrued and would therefore be payable, the Court will not strike it. See Def. Opp. Br. At 9. For this reason, the Court denies PBGLLC's motion for partial summary judgment seeking to strike the sixteenth affirmative defense of ACE Fire.

### E. The Quantum Meruit Claim Is Dismissed.

ACE Fire argues that even if PBGLLC has standing, its cause of action for quantum meruit must be dismissed because the Agency Agreement covers an identical subject matter, namely payment for services rendered. PBGLLC states that its quantum meruit claim is pled in the alternative and "if a valid contract is found to exist between the parties, by the jury, then the issue of quantum meruit would be moot." Pl. Opp. Br. at 6. PBGLLC also claims that the Agency Agreement was a valid contract. Pl. Br. at 10. Since PBGLLC and Ace Fire both agree

---

[3]For the same reason the Court rejects ACE Fire's one line argument that the fraud and fiduciary duty claims must be dismissed because a duty was owed only to PBGI and not PBGLLC. See Def. Br. 28-29.

that a valid contract exists in this case, the claim for quantum meruit fails as a matter of law and summary judgment as to this claim is granted.  See Van Orman v. American Ins. Co., 680 F.2d 301, 311 (3d Cir. 1982) (finding that New Jersey courts regard the existence of a valid contract as a bar to recovery under a theory of quantum meruit).

### III.   CONCLUSION

For the foregoing reasons, ACE Fire's Motion for Summary Judgment is granted in part and denied in part, and PBGLLC's partial summary judgment motion is granted in part and denied in part.  An appropriate form of order is filed herewith.


Dated: October 29, 2007

                                                   s/ Garrett E. Brown, Jr.
                                       GARRETT E. BROWN, JR., U.S.D.J.